Approved: _____*Michael R Herman*_____
           MICHAEL R. HERMAN
           Assistant United States Attorney

Before:   HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York   **20 MAG 9320**

------------------------------------x
                                    :

UNITED STATES OF AMERICA     :    COMPLAINT
                                    :
       - v. -                    :    Violations of
                                        :    21 U.S.C. § 846
VENTURA PAYANO,              :
JOSE SOLER, and            :    COUNTY OF OFFENSE:
JOSE CIRIACO,                :    NEW YORK
                                    :
            Defendants.     :
                                    :
------------------------------------x

SOUTHERN DISTRICT OF NEW YORK, ss:

     STEPHANIE RAMIREZ, being duly sworn, deposes and says that she is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

     1.   In or about August 2020, in the Southern District of New York and elsewhere, VENTURA PAYANO, JOSE SOLER, and JOSE CIRIACO, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

     2.   It was a part and an object of the conspiracy that VENTURA PAYANO, JOSE SOLER, and JOSE CIRIACO, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, Untied States Code, Section 841(a)(1).

     3.   The controlled substance that VENTURA PAYANO, JOSE SOLER, and JOSE CIRIACO, the defendants, conspired to distribute and possess with intent to distribute was one kilogram and more of

mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charges are, in part, as follows:

4. I am a Special Agent with the DEA. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my participation in this investigation, my review of law enforcement reports and documents, my participation in surveillance and the execution of search warrants, and my conversations with other law enforcement officers, I have learned the following, in substance and in part:

   a. In or about early August 2020, I and other law enforcement agents began conducting an investigation into a suspected large-scale heroin "mill" — i.e., a location where large amounts of heroin are manufactured and bagged for distribution — believed to be located in the Washington Heights neighborhood of Manhattan, New York, and operated by VENTURA PAYANO, the defendant, and his associates.

   b. On or about August 10, 2020, the Honorable Ona T. Wang, United States Magistrate Judge for the Southern District of New York, authorized a warrant and order for, among other things, prospective cellphone location information for a cellphone (the "PAYANO Cellphone") believed to be used by PAYANO (the "August 10 Warrant and Order").

   c. Based on my review of travel records, I have learned that on or about August 28, 2020, PAYANO arrived at Newark Liberty International Airport from an international flight. Cellular location information obtained pursuant to the August 10 Warrant and Order showed that upon PAYANO's arrival in the United States, the PAYANO Cellphone travelled from the Newark airport to the vicinity of a building ("Address-1") in Washington Heights that

law enforcement believes contains a residence of PAYANO's ("Apartment-2").

        d.   Cellular location information obtained pursuant to the August 10 Warrant and Order showed that on multiple occasions following his arrival in the United States on or about August 28, 2020, the PAYANO Cellphone travelled from the vicinity of Address-1 to the vicinity of another apartment building also in Washington Heights ("Address-2") during daylight hours, and then returned to Address-1 at night. As explained below, Address-2 contains a particular apartment ("Apartment-1") that law enforcement believes is the heroin mill that PAYANO and his associates were operating. Law enforcement later searched Apartment-1 and recovered, among other things, numerous large bricks of heroin, and various materials and paraphernalia associated with the large-scale distribution of heroin.

        e.   On or about August 31, 2020, cellular location information obtained pursuant to the August 10 Warrant and Order showed that the PAYANO Cellphone was located in or around Address-2, i.e., the building containing the heroin mill, starting at approximately 8:23 a.m.

        f.   That same day, I and other law enforcement officers established surveillance inside and around Address-2. Building management provided law enforcement with access to certain security camera footage of Address-2, which law enforcement reviewed. That video showed, among other things, that at approximately 8:14 a.m. that morning (i.e., minutes before the PAYANO Cellphone started pinging at Address-2), an individual who I believe to be PAYANO — based on his appearance and my observations of PAYANO during this investigation, including during his subsequent arrest — entered Address-2 with another individual, later identified as JOSE SOLER, the defendant. PAYANO and SOLER proceeded together into the elevator, rode it to the sixth floor, and made a right turn out of the elevator. Based on my review of the layout of the sixth floor of Address-2, I know that Apartment-1 is reached by taking a right turn out of the elevator.

        g.   Later that same day, law enforcement officers conducting surveillance on the fifth floor of Address-2 observed PAYANO and SOLER walk together down the stairwell from the sixth floor (where Apartment-1 is located), to the fifth floor, and then on towards the ground floor. Based on my training, experience, and participation in this investigation, I believe that PAYANO and SOLER were coming from Apartment-1 on the sixth floor. When they got to the lobby, PAYANO and SOLER were stopped by law enforcement

and placed under arrest.  Incident to their arrest, law enforcement recovered, among other things, what appeared to be identical keys from the persons of both PAYANO and SOLER, which keys, as set forth below, later opened a safe inside Apartment-1 that contained heroin and related heroin distribution paraphernalia.

       h.   Meanwhile, law enforcement proceeded to the sixth floor of Address-2, where they observed another individual, later identified as JOSE CIRIACO, the defendant, exit Apartment-1 with a large bulge in his pants.  Law enforcement stopped CIRIACO and discovered seven bricks containing suspected heroin in CIRIACO's groin area, as well as a large amount of cash tied together with a rubber band in his pants pocket, which, based on my training and experience, is consistent with the manner in which narcotics traffickers commonly bundle and conceal narcotics proceeds.  In order to ensure officer safety and secure the scene, law enforcement then entered Apartment-1.

       i.   On or about August 31, 2020, following the events described above, the Honorable James L. Cott, United States Magistrate Judge for the Southern District of New York, issued a search warrant for Apartment-1 (the "Apartment-1 Search Warrant").

       j.   Law enforcement then executed the Apartment-1 Search Warrant and recovered, among other things, numerous bricks of suspected heroin located within various bags within Apartment-1 (the "Apartment-1 Narcotics").  Law enforcement also recovered, also in numerous bags throughout the apartment, various types of equipment that I know, through my training and experience, are used by narcotics traffickers in the preparation of heroin for sale, including glassines, a scale, a work table, aprons, and scotch tape.  Photographs of some of the heroin and heroin distribution paraphernalia seized from the mill at Apartment-1 is below:

 

   k. In addition, law enforcement observed a safe within Apartment-1, which opened with each of the keys that law enforcement had recovered from PAYANO and SOLER, as described above. Within the safe were, among other things, bags of suspected heroin, glassines, and related paraphernalia. A photograph of the contents of the safe is below:



5

6. Based on my communications with other law enforcement officers and my review of law enforcement records, I have learned that the Apartment-1 Narcotics were subsequently weighed and field tested, and found to consist of approximately 3.7 kilograms of substances testing positive for heroin. In addition, the narcotics seized from the person of JOSE CIRIACO, the defendant, were weighed and field tested, and found to consist of approximately 140 grams of substances testing positive for heroin.

7. On or about August 31, 2020, following the execution of the Apartment-1 Search Warrant, the Honorable James L. Cott, United States Magistrate Judge for the Southern District of New York, issued a search warrant for Apartment-2 (the "Apartment-2 Search Warrant"), believed by law enforcement to be a residence of VENTURA PAYANO, the defendant, based on, among other things, law enforcement reports indicating that PAYANO self-reported that he lived at Apartment-2 in connection with a recent complaint report, and the cellphone location information obtained pursuant to the August 10 Warrant and Order, described above. Law enforcement then executed the Apartment-2 Search Warrant and recovered, among other things, identification documents bearing PAYANO's name, and a large amount of cash tied together in what appeared to be uniform increments, which based on my training and experience, is consistent with the manner in which narcotics traffickers commonly bundle narcotics proceeds. A photograph of the cash is below:



WHEREFORE, I respectfully request that VENTURA PAYANO, JOSE SOLER, and JOSE CIRIACO, the defendants, be imprisoned or bailed, as the case may be.

          /s/ Stephanie Ramirez
          STEPHANIE RAMIREZ
          Special Agent
          Drug Enforcement Administration

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1, this
1st day of September, 2020

_____
JAMES L. COTT
United States Magistrate Judge